# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| RASHANN GRIER, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 09-1140 |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## O R D E R

This matter is now before the Court on Petitioner, Rashann Grier's ("Grier"), Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, Grier's § 2255 Motion [#1] is DENIED.

### BACKGROUND

On July 21, 2005, Grier was indicted on charges of conspiracy to distribute crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). He pled guilty to the Indictment and was sentenced to 275 months' imprisonment and 10 years' supervised release. Grier pursued a direct appeal to the Seventh Circuit, and the Court of Appeals issued a limited remand for resentencing pursuant to United States v. Taylor, 520 F.3d 746 (7th Cir. 2008). On remand, his sentence was reduced to the statutory mandatory minimum of 240 months' imprisonment, and the Court of Appeals subsequently dismissed the appeal.

Grier now brings this § 2255 motion in which he argues that counsel was ineffective for failing to properly object to inaccuracies in the presentence report and for inducing him to enter a guilty plea based on false promises. The Government has filed its response, and this Order follows.

**DISCUSSION**

A petitioner may avail himself of § 2255 relief only if he can show that there are "flaws in the conviction or sentence which are jurisdictional in nature, constitutional in magnitude or result in a complete miscarriage of justice." Boyer v. United States, 55 F.2d 296, 298 (7th Cir. 1995), *cert. denied*, 116 S.Ct. 268 (1995). Section 2255 is limited to correcting errors that "vitiate the sentencing court's jurisdiction or are otherwise of constitutional magnitude." Guinan v. United States, 6 F.3d 468, 470 (7th Cir. 1993), *citing* Scott v. United States, 997 F.2d 340 (7th Cir. 1993).

A § 2255 motion is not, however, a substitute for a direct appeal. Doe v. United States, 51 F.3d 693, 698 (7th Cir.), *cert. denied*, 116 S.Ct. 205 (1995); McCleese v. United States, 75 F.3d 1174, 1177 (7th Cir. 1996). Federal prisoners may not use § 2255 as a vehicle to circumvent decisions made by the appellate court in a direct appeal. United States v. Frady, 456 U.S. 152, 165 (1982); Doe, 51 F.3d at 698. Accordingly, a petitioner bringing a § 2255 motion is barred from raising: (1) issues raised on direct appeal, absent some showing of new evidence or changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; or (3) constitutional issues that were not raised on direct appeal, absent a showing of cause for the default and actual prejudice from the failure to appeal. Belford v. United States, 975 F.2d 310, 313 (7th Cir. 1992), *overruled on other grounds by* Castellanos v. United States, 26 F.3d 717, 710-20 (7th Cir. 1994).

Criminal defendants are guaranteed the right to effective assistance of counsel under the Sixth Amendment. Watson v. Anglin, 560 F.3d 687, 690 (7th Cri. 2009). The seminal case on ineffective assistance of counsel is Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the Court stated that in order for a prisoner to demonstrate that

counsel's performance fell below the constitutional standard, the petitioner would have to show that "counsel's representation fell below an objective standard of reasonableness." Id., at 687-88; Wyatt v. United States, 574 F.3d 455, 458-59 (7th Cir. 2009). Courts, however, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 690. A prisoner must also prove that he has been prejudiced by his counsel's representation by showing "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. In the context of a guilty plea, ineffective assistance requires a showing of a reasonable probability that, but for the errors of counsel, he would not have pled guilty but rather would have insisted on going to trial. Wyatt, 574 F.3d at 458. Absent a sufficient showing of both cause and prejudice, a petitioner's claim must fail. United States v. Delgado, 936 F.2d 303, 311 (7th Cir. 1991).

Grier first argues that his counsel at sentencing was ineffective for failing to properly object to inaccuracies in the presentence report, which were relied on by the Court in establishing his base offense level. Specifically, he complains about a 2-level enhancement that he received for being a leader or organizer in the conspiracy and the overstatement of the drug quantity used to calculate his base offense level. Initially, the Court notes that these issues were raised by counsel at sentencing, as discussed below. However, Grier has waived these sentencing issues by failing to challenge them on direct appeal.

In Prewitt v. United States, 83 F.3d 812, 816 (7th Cir. 1996), the Seventh Circuit held that a habeas petition is rarely, if ever, the correct way to challenge an application of Sentencing Guidelines where the sentence has become final and the issue was not raised

on appeal.  The underlying Guidelines issues are issues that could have been raised by new counsel during his direct appeal to the Seventh Circuit, but were not.

> An issue not raised on direct appeal is barred from collateral review absent a showing of both good *cause* for the failure to raise the claims on direct appeal and actual *prejudice* from the failure to raise those claims, or if a refusal to consider the issue would lead to a fundamental miscarriage of justice.

Prewitt v. United States, 83 F.3d 812, 816 (7th Cir. 1996), *citing* Reed v. Farley, 512 U.S. 339, 114 S.Ct. 2291, 2300 (1994); Dawson v. United States, 77 F.3d 180, 183 (7th Cir.1996); McCleese, 75 F.3d at 1177-78.  As Grier failed to make any such challenges on direct appeal, and has not indicated how this failure could be attributed to ineffective assistance of counsel given the fact that he had different counsel appointed to represent him on direct appeal, he has waived any such claims.[1]

However, Grier argues that in order "to reveal the full deprivation of his constitutional rights," this purported error of counsel must be analyzed in light of his claim that his counsel improperly coerced him into pleading guilty with false promises of a lesser sentence.  As his advisory guideline range was higher than counsel had predicted, he argues that the departure that he obtained through providing substantial assistance to the Government "lost its essence."  Grier argues that his counsel had a duty to object to bring the quantity in line with what had allegedly been promised prior to the entry of his plea.  As a result, he argues that he should be allowed to withdraw his plea and decide whether he wants to plead guilty with a full knowledge of the amount of cocaine base that would be attributed to him and provide assistance to the government, or alternatively go to trial.

---

[1] Nor has Grier attempted to properly invoke the narrow fundamental miscarriage of justice exception to avoid default.

Grier's current protestations are undermined by the record in this case. After confirming Grier's education and that he was not under the influence of any drug, medication, or alcoholic beverage, the Court and Grier engaged in the following colloquy:

> Q. Have you fully discussed those charges and the case in general, including any possible defenses that you might have, with Mr. Lonergan as your attorney?
>
> A. Yes, sir.
>
> Q. Are you fully satisfied with the counsel, representation and advice given to you in this case by Mr. Lonergan?
>
> A. Yes, sir.
>
> The Court: Mr. Lonergan, do you have any agreement or understanding with the Government on this plea?
>
> Mr. Lonergan: No, Your Honor.
>
> Q. Is that correct, sir?
>
> A. Yes, sir.
>
> Q. So has anyone made any promises or assurances of any kind to you in an effort to induce you to plead guilty?
>
> A. No, sir.
>
> Q. Has anyone attempted in any way to force you to plead guilty?
>
> A. No, sir.
>
> Q. Are you pleading guilty of your own free will because you are guilty?
>
> A. Yes, sir.
>
> * * *
>
> Q. The indictment charges in one count the crime of conspiracy to knowingly distribute crack cocaine. The penalties for that are dependent, in part, on the

question of whether or not you have a prior felony drug conviction. Is it your understanding that you do or do not have a prior felony drug conviction?

A. Yes, sir.

Q. You do?

A. Yes, sir.

* * *

Q. Well then, as I understand it, with one prior felony drug conviction what you're looking at here is a mandatory minimum of 20 years, a maximum of life imprisonment, a fine of up to $8 million, supervised release term of 5 years to life, a special assessment of $100. . . . Do you understand that?

A. Yes, sir.

Q. Do you have any questions about the penalties?

A. No, sir, not at this time.

* * *

Q. Have you and Mr. Lonergan talked about how the advisory sentencing guidelines might apply to your case?

A. Yes, sir.

Q. Do you understand that the Court will not be able to determine the advisory guideline range for your case until after the pre-sentence report has been completed and you and the Government have had an opportunity to challenge the reported facts and the application of the guidelines recommended by the probation officer and that the sentence imposed may be different from any estimate your attorney may have given you up to this point? Do you understand?

A. Yes, sir.

The Court: Mr. Lonergan, what is the worst case scenario that you've discussed with him?

Mr. Lonergan: Judge, I have spoken to Mr. Murphy and in fact me with members of the probation office in attempting to narrow down what the sentence would possibly be and I think, barring surprises or barring any surprise, we're looking right at or below the mandatory minimum of 240 months.

The Court: Any questions are the result of questions relating to the weight of the drugs?

Mr. Lonergan: That's exactly — well, there are some questions as to weight, other enhancements such as role in the offense that we're not clear on at this point.

The Court: Fair enough.

Q. Is that correct? Have you had those discussions?

A. Yes, sir.

Q. Do you understand that after your guideline range has been determined, the Court has the authority under the present law — wait a minute. Strike that. This is a case where you really have two things in operation at the same time. You've got this mandatory minimum of 240 months. You also have the sentencing guidelines. If the sentencing guidelines come in below 240 months, then it would be as if they don't exist. They would basically be ignored. If the guidelines come in above 240 months, then the guidelines would be fully operational and the Court would give them full consideration. Do you understand that?

A. Yes, sir.

Q. So to the extent to which the guidelines are operational, do you understand that after the guideline range has been determined under the present law of the Court, depending on the findings that are made at the time of sentencing, could impose a sentence that is above the guideline range, within the guideline range or below the guideline range, but I could not impose a sentence below the mandatory minimum? Do you understand?

A. Yes, sir.

* * *

Q. The indictment charges that from about November of 2001 to about September 30, 2003, in Peoria County, within this federal district and elsewhere, that you did knowingly conspire and agree with others to commit certain acts in violation of the laws of the United States, that is to knowingly distribute cocaine base, that is crack cocaine, a Schedule II controlled substance. That is was part of the conspiracy that you and others would at various times distribute crack cocaine, also that the conspiracy involved more than 50 grams of crack cocaine.

It charges that certain overt acts were committed in furtherance of the conspiracy. That during the period of the conspiracy various, persons would obtain crack cocaine, transport it from locations outside the district into this district, weigh and repackage the crack cocaine and distribute the crack cocaine, also that during the period of the conspiracy you directed persons to drive from Peoria to Chicago to obtain crack cocaine and bring it back to Peoria where you weighed and repackaged the cocaine into smaller quantities and then distributed it to other individuals for them to sell in Peoria.

The word "knowingly" in this charge is defined as meaning that your conduct was voluntary, that you understood what you were doing, that your conduct was not the result of ignorance, accident, mistake or some other innocent reason. Do you understand that?

A. Yes, sir.

* * *

Mr. Murphy: Your Honor, if this case were to go to trial our evidence would show that during the time period of late 2001, beginning around November 1 of 2001, up and through late September of 2003, the defendant and other individuals here in the Peoria area were involved in a drug distribution network. Specifically the drug was crack cocaine. Most of the crack cocaine was obtained from individuals in the Chicago area and it was obtained, as the defendant has indicated, in crack cocaine form and brought

> here and repackaged and sold here to other individuals.
>
> Our specific events that would show this would be that on both November 1 and November 7, and undercover FBI agent purchased first 13.6 grams and then 26.5 grams of crack cocaine from an individual, who he later told us his source for that crack cocaine was the defendant. In October of 2002, another co-defendant, a co-conspirator, was released from jail and he began to make trips to Chicago to pick up crack cocaine for Mr. Grier. This individual was arrested in April of 2003 and was in possession of 77 grams of crack cocaine at that time. A third individual was arrested with 112 grams of crack cocaine in February of 2002 and this individual claims to have sold 2 to 3 ounces per month of crack cocaine from late 2001 until his arrest in February of '02. He named Mr. Grier as the source for his crack cocaine. Another individual was arrested in April of 2002 with a half kilo of crack cocaine in her car and in her proffer she indicated that she had gone to Chicago with her boyfriend to pick up the crack cocaine for Mr. Grier. Last, actually September 30, 2003, the defendant, Mr. Grier, as arrested by the Chicago Police Department and was found to be in possession in his vehicle of 65 grams of crack cocaine. All of these amounts or quantities would be consistent with an intent to distribute the crack cocaine in question. Thank you.

\* \* \*

Q. Is this an accurate statement of what happened?

A. Yes.

Transcript of May 12, 2006, Change of Plea Hearing at 3-15.

Thus, the record clearly demonstrates that Grier's current argument and purported reliance on the alleged promises of counsel is contrary to the statements he made under oath when entering his guilty plea. The above-referenced dialog establishes that Grier specifically acknowledged that he had no agreement with the Government and that no one

had made any promises to induce him to plead guilty. He was also advised by the Court that he faced a mandatory minimum of 240 months and that despite his discussions with counsel, his advisory guideline range could not be determined until after the pre-sentence report was completed, and his ultimate sentence could differ from what his counsel had predicted. Counsel stated that there were some questions remaining regarding the drug weight to be attributed to Grier and whether there would be an enhancement for his role in the offense that could have an effect on his sentence, and Grier acknowledged that he was aware of these issues. The Court further explained that after all the calculations were made, the sentence imposed could be above the guideline range and would in no case be below the mandatory minimum of 240 months. Grier again indicated his understanding of these concepts and that the final sentencing decision belonged to the Court. Such representations made under oath are presumed to be true. United States v. Linder, 530 F.3d 556, 564 (7th Cir. 2008); United States v. Schuh, 289 F.3d 968, 975 (7th Cir. 2002).

Grier's allegation that he would have chosen to go to trial but for counsel's predictions, standing alone, is insufficient to establish prejudice. Wyatt, 574 F.3d at 458, *citing* Bethel v. United States, 458 F.3d 711, 718 (7th Cir. 2006). The Seventh Circuit has held that a "competent lawyer will attempt to learn all of the relevant facts of the case, make an estimate of a likely sentence, and communicate the results of that analysis to the client before allowing the client to plead guilty." Id., at 717. Significantly, counsel need not be unerring in his prediction to be effective. Dagostini v. United States, 2006 WL 3613225, at *2 (E.D.Wis. Dec. 11, 2006), *citing* McMann v. Richardson, 397 U.S. 759, 770 (1970); Barker v. United States, 7 F.3d 629, 622 (7th Cir. 1993).

Even if counsel provided Grier with mistaken predictions regarding his sentence, the record indicates that counsel discussed the issues with his client and conferred with both

the probation officer and the prosecutor prior to making his predictions.  There is no indication that counsel's predictions were not the result of a good-faith investigation and effort to estimate what his sentence might be.  United States v. Barnes, 83 F.3d 934, 940 (7th Cir. 1996).  Additionally, the maximum penalties that he faced and the fact that his sentence could vary from counsel's estimate were clearly explained by the Court during the plea colloquy, as was the fact that certain factors that could potentially increase his sentence remained unknown.  Even when accompanied by erroneous estimates of the likely sentence by counsel, defendant's claim that he would have gone to trial will still be insufficient if, as here, he assured the Court during the plea colloquy that he was not relying on a particular promise or that he understood that the ultimate sentence could differ from counsel's predictions.  Bethel, 458 F.3d at 718.

Moreover, the record confirms that counsel did in fact raise appropriate objections to the drug quantity and enhancement for role in the offense and supported these objections with argument at sentencing.  Counsel objected to the enhancement for role in the offense on the grounds that the factual allegations contained in the pre-sentence report do not support a finding that Grier acted as a manager or supervisor in the conspiracy. (Transcript of 12/11/06 Sentencing Hearing at 4, 7)  The fact that the objection was ultimately unsuccessful does not negate that it was in fact made by counsel on Grier's behalf.  Counsel also objected to the inclusion of certain drug weights on the basis that they represented dates outside of the conspiracy period and actually succeeded in having a substantial amount of drug weight excluded from the computations.  Id., at 14-18. Counsel further persuaded the Court to reduce Grier's criminal history category from a VI to a V.  Id., at 18-21.  When asked if there was anything else in the report that he felt was inaccurate or that he wished to challenge, Grier responded, "No, sir."  Id., at 22.

Given Grier's admitted understanding of the situation/possible penalties and affirmative statements during the plea colloquy, including the denial that he was made promises or otherwise induced to plead guilty, the record reveals that his guilty plea was made with full knowledge of its consequences. As a result, his current protestations fall short of establishing that his counsel's advice was a decisive factor in his decision to enter a guilty plea rather than go to trial. Julian v. Bartley, 495 F.3d 487, 498 (7th Cir. 2007); United States v. Martinez, 169 F.3d 1049, 1053 (7th Cir. 1999). Having failed to establish either that counsel's performance was deficient or that he suffered prejudice, Grier's ineffective assistance claim must fail. *See* Eddmonds v. Peters, 93 F.3d 1307, 1313 (7th Cir. 1996).

The Court further denies the request for an evidentiary hearing in this matter. Grier is entitled to an evidentiary hearing only if he has alleged facts that, if proven, would entitle him to relief. Sandoval v. United States, 574 F.3d 847, 850 (7th Cir. 2009). As the factual issues relevant to Grier's claims in this action can be resolved on the record, an evidentiary hearing is not required. Oliver v. United States, 961 F.2d 1339, 1343 (7th Cir. 1992).

## CONCLUSION

For the reasons set forth herein, Grier's Motion to Vacate, Set Aside, or Correct Sentence pursuant to § 2255 [#1] is DENIED. This matter is now terminated.

ENTERED this 12th day of March, 2010.

s/ Michael M. Mihm<br>
Michael M. Mihm<br>
United States District Judge